Andrew P. Bridges SBN 122761
Jennifer Golinveaux SBN 203056
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111-5802
(415) 591-1000 (ph)
(415) 591-1400 (fax)

Attorneys for Defendants Giganews, Inc. and Livewire Services, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PERFECT 10, INC., a California corporation,

Plaintiff,

vs.

GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,

Defendants.

Case No. 11-CV-0905 H (MDD)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO CHANGE VENUE**

**DATE: August 1, 2011**
**TIME: 10:30 a.m.**
**Hon. Marilyn L. Huff**
**COURTROOM 13 – Fifth Floor**

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ....1

I. INTRODUCTION ....1

II. FACTUAL BACKGROUND ....1

A. Defendants' Business ....1

B. Perfect 10's Business ....2

C. This Lawsuit ....3

III. ARGUMENT ....4

A. Legal Standard. ....4

B. Perfect 10 Could Have Brought Its Action in the Central District. ....5

C. Perfect 10's Choice of a Forum with No Connection to the Action or the Parties Is Entitled to Minimal Consideration. ....6

D. Convenience of the Witnesses and Parties Favors Transfer. ....8

1. The Parties' Contacts with the Central District Favor Transfer ....9

2. The Central District Is Also More Convenient for Key Non-Party Witnesses. ....10

E. Lack of Local Interest in the Dispute Favors Transfer. ....13

F. The Interest of Justice and a Speedy Trial Favor Transfer ....14

IV. CONCLUSION. ....15

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ACLU v. Reno*,
929 F. Supp. 824 (E.D. Pa. 1996),
*aff'd sub nom Reno v. ACLU*, 521 U.S. 844 (1997)....1, 2

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 11124 (9th Cir. 2010)....5

*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*,
106 F.3d 284 (9th Cir.), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998)....6

*Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*,
472 F. Supp. 2d 1183 (S.D. Cal. 2007)....9

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986)....4, 5, 14

*Garcia v. Allstate Ins. Co.*,
No. C 96-2434, 1996 WL 601689 (N.D. Cal. Oct. 9, 1996)....9

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984)....14

*Gonzales v. Palo Alto Labs, Inc.*,
No. C 10-2456, 2010 WL 3930440 (N.D. Cal. Oct. 6, 2010)....8

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000)....5

*Lucas v. Daiichi Sankyo Co., Inc.*,
No. C 11-0772, 2011 WL 2020443 (N.D. Cal. May 24, 2011)....7

*Multimedia Patent Trust v. Tandberg, Inc.*,
No. 09-cv-1377, 2009 WL 3805302 (S.D. Cal. Nov. 12, 2009)....4, 7, 9

*Norwood v. Kirkpatrick*,
349 U.S. 29 (1955)....4

*Pacific Car & Foundry Co. v. Pence*,
403 F.2d 949 (9th Cir. 1968)....4, 7, 8, 15

*Perfect 10, Inc., v. Google*,
Case No. 04-CV-09484 (N.D. Cal., filed Nov. 19, 2004)....9

*Perfect 10, Inc. v. Amazon.com*, No. 05-CV-4753 (filed June 29, 2005) ....................14

*Perfect 10, Inc. v. CCBill LLC*, No. 02-CV-7624 (filed Sept. 30, 2002) ....................14

*Perfect 10, Inc. v. Cybernet Ventures*, No. 01-CV-2595 (filed Mar. 20, 2001)....................14

*Perfect 10, Inc. v. Full Moon Internet*, No. 03-CV-1129 (filed Feb. 18, 2003) ....................14

*Perfect 10, Inc. v. Google, Inc.*, Case No. 04-CV-9484 (C.D. Cal. Jan. 11, 2010)....................10

*Perfect 10, Inc. v. Google, Inc.*, No. 04-CV-9484 (C.D. Cal. Dec. 13, 2009) ....................12

*Perfect 10, Inc. v. Google, Inc.*, No. 04-CV-9484 (filed Nov. 19, 2004)....................14

*Perfect 10, Inc. v. Guba LLC*, No. 02-CV-2842 (filed June 13, 2002) ....................14

*Perfect 10, Inc. v. Internet Video Group*, No. 99-CV-5332 (filed May 20, 1999) ....................14

*Perfect 10, Inc. v. Microsoft Corp.*, No. 07-CV-5156 (filed Aug. 8, 2007)....................14

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. 04-cv-371 (N.D. Cal. Jan. 28, 2004)....................12

*Piper Aircraft Co. v. Reyno*, 454 U.S 235 (1981)....................14

*PRG-Schultz USA, Inc. v. Gottschalks, Inc.*, No. 05-2811, 2005 WL 2649206 (N.D. Cal. Oct. 17, 2005) ....................7

*Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152 (S.D. Cal. 2005).................... passim

*Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635 (9th Cir. 1988) ....................4

*Sullivan v. Author Solutions, Inc.*, 2008 WL 2937786 (E.D. Wis. July 23, 2008) ....................6

*Van Dusen v. Barrack*, 376 U.S. 612 (1964)....................4

**STATUTES**

28 U.S.C. § 1391(b)(1) ....................5

28 U.S.C. § 1391(b)(2) ....................6

28 U.S.C. § 1391(c) ....................5

28 U.S.C. § 1400....................6

28 U.S.C. § 1400(a) ....................6

28 U.S.C. § 1404....................4, 9

28 U.S.C. § 1404(a) .................... passim

**OTHER AUTHORITIES**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[C] (1963)....................6

*Amber Smith: Biography 2010*, http://ambersmith.ning.com/notes/Notes_Home (last visited June 1, 2011)....................11

*Annual Report of the Director: Judicial Business of the United States Courts*....................14

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is a case that Plaintiff Perfect 10, Inc. both could, and should, have brought in the Central District of California. Serial litigant Perfect 10 has brought dozens of lawsuits in the Central District of California over the last decade and a half. Perfect 10 is located in the Central District. Norman Zada, its founder and principal, resides in the Central District. Key witnesses, including Perfect 10's accountant, relevant employees, and DMCA agent, are all in the Central District.

Perhaps having worn out its welcome at home, Perfect 10 has strategically turned its sights to the Southern District, where neither it nor Defendants have any equipment, offices, or employees; where none of the operative facts involved in this case occurred; and where not a single party witness and likely few (if any) third-party witnesses reside. By contrast, in addition to the location of Plaintiff and its principal in the Central District, key third party witnesses also reside in the Central District, and Defendants' only California-based servers are located in the Central District.

Because neither the parties, the operative facts, nor any likely witnesses have any discernable connection to the Southern District, and because the Central District is a more appropriate, convenient, and efficient venue for this case, Defendants respectfully request that the court transfer the case to the Central District of California pursuant to 28 U.S.C. Section 1404(a).

### II. FACTUAL BACKGROUND

#### A. Defendants' Business

Defendants are Internet service providers that provide Usenet access to their users. Graduate students conceived of the idea of Usenet in the late 1970's, and it was established shortly after. Usenet is one of the oldest computer network communications systems still in widespread use. Like the World Wide Web, which it predates, Usenet is one of the many information systems and networks that make up the Internet. *See ACLU v. Reno*, 929 F. Supp. 824, 832 (E.D. Pa. 1996), *aff'd sub nom Reno v. ACLU*, 521 U.S. 844 (1997) ("other formal or loose networks includ[ing] . . . USENET . . . were . . . linked together. . . . It is this series of linked networks . . . that is today commonly known as the Internet."). The Usenet network stores a vast worldwide collection of online discussion forums, similar to electronic bulletin boards, that consists of tens of thousands of

discussion groups, known as "newsgroups," covering subjects ranging from computer information systems to scuba diving. *See id.* at 834-35 (describing Usenet newsgroups as "among the most popular and widespread applications of Internet services . . . cover[ing] all imaginable topics of interest to users").

Giganews and Livewire are two of the many service providers that provide users access to the Usenet. Founded in 1998, Defendant Giganews is a Texas corporation headquartered in Austin, Texas. Declaration of Philip Molter ("Molter Decl.") ¶ 5. Giganews maintains servers in various locations around the world, including downtown Los Angeles. *Id.* ¶ 6. Giganews's servers, like servers owned by other entities, store a comprehensive compilation of Usenet messages and newsgroup files and provide user access to Usenet. *Id.* ¶ 7. Defendant Livewire is a Nevada corporation. Declaration of Ronald Yokubaitis ("Yokubaitis Decl.") ¶ 3. Livewire provides Usenet access to its subscribers. *Id.* Neither Giganews nor Livewire owns or leases any equipment of any kind or maintains any facilities or employees in the Southern District of California. *Id.* ¶ 4; Molter Decl. ¶ 8.

**B. Perfect 10's Business**

Perfect 10, based in Los Angeles, is a purveyor of images of naked women and is an experienced serial litigant best known for bringing a series of copyright infringement lawsuits against companies such as Amazon.com, Visa, MasterCard, Google, and Microsoft. A favored tactic of Perfect 10, honed over more than a decade, is to make litigation as inconvenient as possible for its targets, thereby creating incentives for favorable settlement. A by-product of Perfect 10's litigation practice is to make its cases unduly complicated for courts.[1]

Although Perfect 10 claims that "rampant infringement" has driven it from both the magazine business (Complaint ¶ 14) and the business of "licensing of downloads of images for cellphones" (Complaint ¶ 15), it persistently fails to take advantage of laws and standard notice procedures that allow it to obtain removal of specific infringing copies of its copyrighted works from

[1] Attached as Exhibit U to the Declaration of Thomas J. Kearney is a copy of an Order issued in another of Perfect 10's litigations against service providers, in which the court states that the Perfect 10 litigations are "unusually complex cases that have posed difficult problems for all the parties and the Court, especially in discovery." Declaration of Thomas J. Kearney ("Kearney Decl.") ¶ 22.

Internet services. Instead of following the law and standard procedures, Perfect 10 obstinately persists in a crusade to enforce defective forms of infringement notices despite repeated court rulings that clearly and consistently have spelled out their shortcomings. Perfect 10's defective notices aim at imposing on service providers a formidable burden of work for it by seeking out and removing any and all potentially infringing images, whether or not Perfect 10 has identified them or provided notices with required information such as where the alleged infringements reside.

Perfect 10's offices are in Los Angeles. Kearney Decl. ¶ 2. Perfect 10's founder and principal Norman Zada resides within the Central District of California. Kearney Decl. ¶ 3. Its accountant and its DMCA Agent also reside in the Central District. Kearney Decl. ¶¶ 4-5 (accountant), 6 (DMCA Agent).

**C. This Lawsuit.**

Perfect 10 filed this action against Defendants alleging several claims: (1) direct and indirect copyright infringement, based upon Defendants' provision of Usenet access and Perfect 10's allegation that Usenet contains material that infringes its copyrights; (2) trademark infringement and dilution based upon Defendants' alleged provision of Usenet search results that contain Perfect 10's marks; (3) unfair competition based upon the alleged copyright and trademark infringement; and (4) violation of rights of publicity it claims to have acquired from various of its models, based upon Defendants allegedly "providing lists of models' names and by returning images that are not of the model," as part of Usenet search results. Complaint ¶ 74.

Perfect 10 fails to establish, or even allege, any connection between this District and the alleged acts of infringement. The Complaint merely alleges that Defendants transact business with individuals within the County of San Diego, Complaint ¶ 3, but it does not allege that any of those individuals have infringed upon Plaintiff's rights. Plaintiff does not allege that Defendants' contacts with San Diego have any connection at all to the operative facts of this case. It alleges that Perfect 10 is a California corporation, but it conveniently fails to mention that its headquarters and operations are in the Central District. It does not allege any connection between Perfect 10 and San Diego County or the Southern District of California, likely because there is no such connection. In fact, it appears that—like Defendants—Perfect 10 has no office, no equipment, and no employees in

the Southern District of California.

## III. ARGUMENT

### A. Legal Standard.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation marks and citations omitted). The threshold question in a 1404(a) transfer is whether the case "might have been brought" in the proposed venue. Once this threshold requirement is met, the court has broad discretion to determine whether to transfer the action. *Van Dusen*, 376 U.S. at 622; *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 639 (9th Cir. 1988); *Multimedia Patent Trust v. Tandberg, Inc.*, No. 09-cv-1377, 2009 WL 3805302, at *3 (S.D. Cal. Nov. 12, 2009) (Huff, J.).

Section 1404(a) "displaces the common law doctrine of *forum non conveniens*" with respect to transfers between federal courts. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)[2]. In passing § 1404(a), though, Congress "intended to permit courts to grant transfers upon a lesser showing of inconvenience" than was needed for dismissal under the doctrine of *forum non conveniens*. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). In addition, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice [of venue] is entitled only to minimal consideration." *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

In determining whether transfer is appropriate in a particular case, courts consider factors such as (1) the plaintiff's choice of forum; (2) the respective parties' contacts with the forum; (3) the contacts relating to the plaintiff's cause of action in the chosen forum; (4) the differences in the costs of litigation in the two forums; (5) the availability of compulsory process to compel attendance of

[2] Accordingly, "*forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion." *Id.* at 843.

unwilling non-party witnesses; (6) the ease of access to evidence; (7) the local interest in having localized controversies decided at home; (8) the unfairness of burdening citizens in an unrelated forum with jury duty; and (9) the relative congestion of dockets in the two districts, measured by the median number of months from filing to trial. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Decker Coal Co.*, 805 F.2d at 843; *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1167 (S.D. Cal. 2005).

As detailed below, the relevant factors overwhelmingly favor transfer of this case. Perfect 10 not only could have but should have brought this action in the Central District. Transfer will serve both the interests of justice and the convenience of the parties and witnesses.

**B. Perfect 10 Could Have Brought Its Action in the Central District.**

A transfer is proper only to a district where the action "might have been brought." 28 U.S.C. § 1404(a). Perfect 10 could have brought this case in the Central District of California for three separate reasons.

First, 28 U.S.C. § 1391(b)(1) provides that venue is proper in a district "where any defendant resides, if all defendants reside in the same state." Where a defendant is a corporation being sued "[i]n a State which has more than one judicial district . . . such corporation shall be deemed to reside in any judicial district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c). The Ninth Circuit applies the following three-prong test to determine whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction:

> The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 11124 (9th Cir. 2010) (affirming venue was proper in plaintiff's home venue, where non-resident defendant had allegedly copied plaintiff's website). Venue is proper in the Central District pursuant to 28 U.S.C. §§ 1391(b)(1) and (c) because Defendants have "consummated . . . transaction[s] with the forum or resident[s] thereof" by

locating servers in the Central District, and Perfect 10's claims "relate[] to" those forum-related activities.

Second, the Central District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Perfect 10 alleges that Defendants infringed its copyrights by means of their servers. *See, e.g.*, Complaint ¶ 25 ("Defendants . . . program their servers to distribute infringing content to other servers . . . Defendants' servers, in turn, are programmed to copy infringing materials from other third party servers"). Defendant Giganews's only California-based servers are in downtown Los Angeles. Molter Decl. ¶ 9. In addition, the copyrights at issue in this case are "situated" for purposes of 28 U.S.C. § 1391(b)(2) in the Central District. "[A] copyright is an intangible, incorporeal right that has no situs apart from the domicile of the proprietor." *Sullivan v. Author Solutions, Inc.*, 2008 WL 2937786 (E.D. Wis. July 23, 2008) (citing 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[C] (1963)). Venue is proper in the Central District because Perfect 10 claims to own the intellectual property at issue in this case, and Perfect 10 is located in the Central District.

Third, 28 U.S.C. § 1400 provides that a civil action "relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The Ninth Circuit has interpreted this statute to mean that venue "is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state." *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 288 (9th Cir.), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998). As described above, Defendants are subject to personal jurisdiction in the Central District.

A transfer to the Central District, therefore, easily meets the threshold requirement of § 1404(a).

### C. Perfect 10's Choice of a Forum with No Connection to the Action or the Parties Is Entitled to Minimal Consideration.

Although as a rule a plaintiff's choice of forum is entitled to some deference, that deference

is much less where (as here) it is not resident in the forum. As the court stated in *Lucas v. Daiichi Sankyo Co., Inc.*, No. C 11-0772, 2011 WL 2020443, *2 (N.D. Cal. May 24, 2011), "the plaintiff's selection of forum has minimal value where the plaintiff is not a resident of the judicial district in which the suit commenced." *See also Multimedia Patent Trust*, 2009 WL 3805302, at *3 (granting motion to transfer where "Plaintiff . . . has not chosen its home forum"); *PRG-Schultz USA, Inc. v. Gottschalks, Inc.*, No. 05-2811, 2005 WL 2649206, *4 (N.D. Cal. Oct. 17, 2005) ("a plaintiff's choice of forum is given much less weight when the plaintiff is not a resident of the chosen forum") (internal quotation marks and citation omitted).

Moreover, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pacific Car*, 403 F.2d at 954; *see also Saleh*, 361 F. Supp. 2d at 1157-58 (S.D. Cal. 2005) (stating that "numerous courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum" and collecting cases). The petitioner in *Pacific Car*, who was the defendant in an underlying antitrust case, sought a writ of mandamus to compel a change of venue. Petitioner, a Washington corporation that manufactured trucks at factories in Washington and California, faced suit in Hawaii by an Australian company. On review, the Ninth Circuit found the district court's decision not to transfer the case clearly erroneous. While recognizing that plaintiffs in antitrust cases were "given a wide choice of forum," the court held that

> Plaintiff's choice of forum . . . is not the final word. In judging the weight to be given such a choice, as is the case with other types of actions, consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action.

*Pacific Car*, 403 F.2d at 954.

In *Pacific Car*, Defendant did not maintain an office in the forum, and it had no employees or agents there. Although it did have a few customers in the forum, the court recognized that "[t]he business transacted . . . [was] not transacted with [the plaintiff] . . . [plaintiff's] claim of injury had nothing to with [the forum] . . . and [plaintiff's] witnesses and evidentiary materials [were] almost entirely located elsewhere." *Id.* at 955. Furthermore, plaintiff's choice of forum was "meaningless

in the absence of some showing that [the choice] served the interests of [plaintiff's] convenience." *Id.* The court held that "a choice of forum supported only by the fact that it was chosen . . . [could not] prevail" against the defendant's showing of inconvenience, and it ordered the district court to reconsider its denial of the motion to change venue. *Id.*

Similarly, *Gonzales v. Palo Alto Labs, Inc.*, No. C 10-2456, 2010 WL 3930440 (N.D. Cal. Oct. 6, 2010) involved a non-resident plaintiff suing a non-resident defendant in an unrelated forum. Plaintiff, a resident of Los Angeles, had sued a company whose principal place of business was in Florida. Even though defendant failed to appear or answer the complaint, the court had "an affirmative duty to . . . assess . . . whether venue [was] proper in the Northern District of California." *Id*. at *3. Plaintiff lived in the Central District of California, and although Defendant evidently did business throughout California, it had "no specific connection to the Northern District of California." *Id*. at *8. The court found that the parties' contacts "weigh[ed] heavily in favor of transfer" and that "it would be inappropriate to allow Plaintiff to remain in this venue simply because he chose to withhold certain residency information, only to later claim it is too late to transfer the case to the proper venue." *Id*. Accordingly, the court ordered the case transferred.

Here, like the petitioner in *Pacific Car*, defendants do not maintain an office in the Southern District, and they have no employees here. Molter Decl. ¶ 8; Yokubaitis Decl. ¶ 4. In fact, as was the case in *Gonzales*, no party to this case has any "specific connection" to the district where Perfect 10 has arbitrarily decided to hale defendants into court. Like the plaintiff in *Gonzales*, Perfect 10's complaint elides the fact that its business and contacts are almost entirely in the Central District: "We are left, then, with a choice of forum supported only by the fact that it was chosen." *Pacific Car*, 403 F.2d at 955.

Perfect 10's choice of forum is entitled to only minimal deference, and considerations of convenience, fairness, and efficiency all favor transfer.

**D. Convenience of the Witnesses and Parties Favors Transfer.**

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Saleh*, 361 F. Supp. 2d at 1160. Importantly, "[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-

party witnesses is the more important factor." *Id.*; *see* also *Multimedia Patent Trust*, 2009 WL 3805302 at *4 ("The convenience of the witnesses – especially third party witnesses – is very important in any analysis of the Section 1404 convenience factors"). A number of likely witnesses, including third party witnesses, live and work in the Central District. Especially because it appears that few if any potential witnesses reside in the Southern District, this factor weighs heavily in favor of transfer. *See, e.g., Garcia v. Allstate Ins. Co.*, No. C 96-2434, 1996 WL 601689, *2 (N.D. Cal. Oct. 9, 1996) (granting motion to change venue where, among other factors, "[i]t . . .appears that not a single potential witness reside[d]" in the transferor district).

**1. The Parties' Contacts with the Central District Favor Transfer**

Perfect 10 is located in the Central District of California, not the Southern District. Kearney Decl. ¶ 2. Perfect 10 appears to have no connection at all with the Southern District that would make this a reasonable choice of forum. Nor would Perfect 10 gain any legitimate advantage from litigating in this forum. In fact, Perfect 10 is already involved in litigation in the Central District, in a closely similar case in which it chose the venue. *Perfect 10, Inc., v. Google*, Case No. 04-CV-09484 (N.D. Cal., filed Nov. 19, 2004) (stayed pending appeal, *see* Case No. 10-56316 (9th Circuit, appeal filed Aug. 24, 2010)).

As mentioned, Perfect 10 has brought twenty-four cases in the Central District since 1997. Kearney Decl. ¶ 7. The only thing connecting Perfect 10 to the Southern District is its current lawyer – which is not a factor the courts consider in deciding a motion under Section 1404. *Costco Wholesale Corp. v. Liberty Mutual Ins. Co.*, 472 F. Supp. 2d 1183, 1195-96 (S.D. Cal. 2007) ("because § 1404(a) makes no reference to counsel, the convenience of counsel is irrelevant").

Likewise, while Defendants have no equipment, facilities, or employees in the Southern District, Perfect 10's Complaint refers extensively to Giganews's servers, and the only servers Giganews has in California are located in downtown Los Angeles, in the Central District. Molter Decl. ¶ 9. Perfect 10 alleges that such servers are the site of the alleged "massive infringements" for which Defendants are allegedly liable. *See, e.g.*, Complaint ¶ 25 ("Defendants store the infringing material on their servers. They program their servers to distribute infringing content. . . ."); *id.* ¶ 28 ("Defendants are . . . copying, reproducing, distributing, displaying, and selling . . . infringing

materials"). Witnesses knowledgeable about the operation of defendants' servers are likely to be in the Central District, not the Southern District. Defendants do not have any servers in the Southern District or elsewhere in California outside of Los Angeles. Molter Decl. ¶ 8-9, Yokubaitis Decl. ¶ 4.

**2. The Central District Is Also More Convenient for Key Non-Party Witnesses.**

It is also appears that a number of important non-party witnesses are located in the Central District of California, for example:

- **<u>Perfect 10's accountant, Bruce Hersh</u>.** Perfect 10's accountant, who has been summoned to testify in other similar copyright litigation brought by Perfect 10, maintains his offices in the Central District. Kearney Decl. ¶ 4-5. Mr. Hersh is likely to have relevant information regarding Perfect 10's alleged acquisition of copyrights and Perfect 10's alleged damages for infringement, as reflected in Perfect 10's court filings in other similar cases against service providers. Kearney Decl. ¶ 4 (attaching Perfect 10, Inc.'s Evidentiary Objections to the Reply Declaration of Rachel Herrick Kassabian in Support of Defendant Google Inc.'s Motion for a Document Preservation Order to Prevent Spoliation of Evidence by Perfect 10, Inc., *Perfect 10, Inc. v. Google, Inc.*, Case No. 04-CV-9484, Docket Entry 703 (C.D. Cal. Jan. 11, 2010) ("Moreover, Perfect 10's accountant, Bruce Hersh, is able to go back and generate any monthly financial statements that did not previously exist, since 2003")).
- **<u>Key Perfect 10 Model Witnesses</u>**. It also appears that several of the models whose copyrighted images Perfect 10 alleges to be infringed and from whom Perfect 10 claims to have secured assignments of publicity rights live in Los Angeles. As indicated below, in addition to being important fact witnesses about the alleged assignment of publicity rights and the circumstances surrounding the creation of many of the copyrighted works at issue, several of these models are also likely to have particular insight into the business of Perfect 10.
    - **<u>Amber Smith</u>.** Perfect 10's Complaint in this action does not name specifically the models whose copyrighted images and rights of publicity it

claims to be at issue, but the Complaint does refer to correspondence from Perfect 10 to Defendants that includes photographs of certain models. On March 25, 2009, Perfect 10 sent Giganews a letter with a disk that contained a number of images of female models in which Perfect 10 claimed copyright. Complaint ¶ 31 ("On March 25, 2009, Perfect 10 sent to Giganews approximately 800 Perfect 10 copyrighted images. . ."). Sixty-four of the files on the disk have filenames that begin with "mbw_amber_smith_set01_. . ." Kearney Decl. ¶ 8. These files presumably contain images of Amber Smith, who is presumably one of the models whom Perfect 10 alleges has assigned her right of publicity to Perfect 10. According to her current website, Amber Smith a resident of Los Angeles. *See Amber Smith: Biography 2010*, http://ambersmith.ning.com/notes/Notes_Home (last visited June 1, 2011) ("Amber, who lives in Los Angeles, celebrates her sobriety every day, with a renewed sense of gratitude and humility.") If this case progresses to discovery, Ms. Smith will likely be an important witness regarding copyrights and rights of publicity alleged by Perfect 10.

- **Amy Weber.** Ms. Weber is an actress and model (Maxim and Perfect 10), whose photographs and publicity rights have been at the heart of several of Plaintiff's lawsuits. In publicly available records, Ms. Weber provides an address in Studio City, California. Kearney Decl. ¶ 9 (attaching Whois report for amyweber.net domain).
- **Irina Voronina.** Perfect 10 model Irina Voronina is also likely to be a witness regarding Perfect 10's alleged acquisition of rights of publicity claimed in this case. Ms. Voronina submitted a declaration in Perfect 10's similar copyright litigation against Google asserting that she assigned her "rights of publicity to Perfect 10 in the hope that Perfect 10 could stop Google from" violating her rights of publicity, and signed the declaration in Los Angeles, California. Kearney Decl. ¶ 10 (attaching Ms. Voronina's

declaration).

- **<u>Perfect 10's Publicist, Eileen Koch</u>.** Eileen Koch, of Eileen Koch & Co. in Los Angeles, has publicized numerous Perfect 10 "special events" including "Model Boxing Television," "Perfect 10 Celebrity Halloween," "Perfect 10 Launch Party," and "Perfect 10 Model of the Year." Kearney Decl. ¶ 11. Ms. Koch has also generated press coverage for her clients in Perfect 10 Magazine. Kearney Decl. ¶ 12. Indeed, one of Ms. Koch's clients, Irina Voronina (discussed above), is one of the models from whom Perfect 10 claimed to have received a publicity rights assignment in a similar lawsuit filed in 2004. Kearney Decl. ¶¶ 13 (Irina Voronina is one of Ms. Koch's clients), 15-16 (Complaint at ¶ 116, *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. 04-cv-371 (N.D. Cal. Jan. 28, 2004), attaching, as Exhibit 10, "a listing of the identities of the models and actresses who have assigned their rights of publicity to Perfect 10"). Ms. Koch is likely to have relevant information regarding both the alleged fame of Perfect 10's trademark (relevant to Perfect 10's trademark dilution claim), and Perfect 10's alleged acquisition of rights of publicity claimed in this case. Her offices are located in Los Angeles. Kearney Decl.¶ 14.
- **<u>Perfect 10 Employee and Model Wendy Augustine</u>**. Wendy Augustine, a Perfect 10 employee (assistant to the publisher and in charge of publicity) who had relevant documents, was deposed, and submitted a declaration in Perfect 10's similar copyright litigation against Google, also appears to be located in Los Angeles, where she signed her declaration submitted in the Google litigation. Kearney Decl. ¶ 17 (attaching Declaration of Wendy Augustine in Support of Perfect 10, Inc.'s Portions of Joint Stipulation, *Perfect 10, Inc. v. Google, Inc.*, No. 04-CV-9484 (C.D. Cal. Dec. 13, 2009)). Ms. Augustine is also one of the models from whom Perfect 10 claimed to have received a publicity rights assignment in the *Perfect 10 v. Visa* litigation, and is, therefore, a likely witnesses regarding Perfect 10's claim for violation of rights of publicity. Kearney Decl. ¶ 16.
- **<u>Perfect 10 Employee Sheena Chou</u>.** Sheena Chou, another Perfect 10 employee

who submitted a declaration in Perfect 10's copyright litigation against Google, also appears to be located in Los Angeles. In that declaration Ms. Chou states that one of her "jobs at Perfect 10 has been to download infringing Perfect 10 images from various pay websites." She further claims to "have personally downloaded more than 15,000 Perfect 10 images from each of at least twenty of the pay sites listed on pages 5 and 6 [of a concurrently filed declaration of Norman Zada] … The pay websites from which I have downloaded thousands of infringing Perfect 10 images include, but are not limited to: … giganews.com." The giganews.com website is owned by Defendant Giganews, and Ms. Chou will likely be an important fact witness in this case. Kearney Decl. ¶ 18 (attaching Chou declaration signed in Los Angeles, California).

- **<u>Perfect 10 Employee Melanie Poblete</u>.** Melanie Poblete, another Perfect 10 employee who submitted a declaration in Perfect 10's copyright litigation against Google, also appears to be located in Los Angeles. In that declaration Ms. Poblete claimed to "have extensive knowledge of the images, copyright registrations, and deposit materials that are relevant to Perfect 10's infringement claims in [the Perfect 10 v. Google] case." Kearney Decl. ¶ 19 (attaching declaration signed in Los Angeles, California). Ms. Poblete is located in Los Angeles. Kearney Decl. ¶ 6 (Perfect 10's registered DMCA Agent is Melanie Poblete, with a Los Angeles address). Ms. Poblete is apparently not an attorney, but her Linked IN profile gives her job title as "Copyright Enforcer." Kearney Decl. ¶ 20.

Each of these important witnesses appears to be located in Los Angeles, California. Not only will they likely need to be deposed if this case progresses, but they may well be important witnesses to subpoena to testify at trial. By contrast, it is not clear that *any* relevant witness is located in the Southern District of California. Because the Central District is more convenient for both the parties and key third party witnesses, this factor weighs strongly in favor of transfer.

**E. Lack of Local Interest in the Dispute Favors Transfer.**

"[T]he court should consider . . . the local interest in having localized controversies decided

at home . . . and the unfairness of burdening citizens in an unrelated forum with jury duty." *Decker Coal Co.*, 805 F.2d at 843 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S 235, 241 n.6 (1981); internal quotation marks omitted). As detailed above, neither the parties nor the operative facts alleged by Perfect 10, are connected in any meaningful way to the Southern District. Thus, this venue has no particular interest in the resolution of this dispute. For the same reasons, it would be unfair to burden citizens in the Southern District with jury duty in this case. These factors also favor transfer of the case to the Central District.

**F. The Interest of Justice and a Speedy Trial Favor Transfer**

The Central District is very familiar with the issues raised in Perfect 10's numerous copyright infringement litigations against Internet service providers. *See, e.g., Perfect 10, Inc. v. Internet Video Group*, No. 99-CV-5332 (filed May 20, 1999); *Perfect 10, Inc. v. Cybernet Ventures*, No. 01-CV-2595 (filed Mar. 20, 2001); *Perfect 10, Inc. v. Guba LLC*, No. 02-CV-2842 (filed June 13, 2002); *Perfect 10, Inc. v. CCBill LLC*, No. 02-CV-7624 (filed Sept. 30, 2002); *Perfect 10, Inc. v. Full Moon Internet*, No. 03-CV-1129 (filed Feb. 18, 2003); *Perfect 10, Inc. v. Amazon.com*, No. 05-CV-4753 (filed June 29, 2005); *Perfect 10, Inc. v. Microsoft Corp.*, No. 07-CV-5156 (filed Aug. 8, 2007). The Central District is currently presiding over one Perfect 10 case with closely similar claims against an Internet service provider. *See Perfect 10, Inc. v. Google, Inc.*, No. 04-CV-9484 (filed Nov. 19, 2004).

In addition, the relative congestion of dockets in the two districts is a relevant factor. *Saleh*, 361 F. Supp. 2d at 1167 (finding transfer appropriate where transferee court was "able to bring a civil case to completion in a significantly shorter amount of time than the Southern District of California"); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) (noting, in a *forum non conveniens* case, that "[t]he real issue is . . . whether a trial may be speedier in another court because of its less crowded docket"). According to the most recent *Annual Report of the Director: Judicial Business of the United States Courts*, the median time between the filing of a civil case and trial was 31.6 months in the Southern District of California and 19.7 months for the Central District of California. Kearney Decl. ¶ 21 (2010 Annual Report of the Director). The interest of the parties, society, and the courts in a speedy resolution to this dispute thus favors transfer as well.

**IV. CONCLUSION.**

This case simply has no discernable connection to the Southern District. Perfect 10's choice to file in the Southern District is entitled to minimal deference and all relevant factors favor transfer. Leaving this case in the Southern District will inconvenience both party and third-party witnesses, many of whom reside in the Central District. "We are left, then, with a choice of forum supported only by the fact that it was chosen." *Pacific Car*, 403 F.2d at 955. That is insufficient. Because transfer will serve the interests of justice and the convenience of witnesses and the parties, defendants respectfully request that the court grant this motion.

Dated: June 21, 2011

Respectfully submitted,

**WINSTON & STRAWN LLP**
Andrew P. Bridges
Jennifer Golinveaux

By s/ Andrew P. Bridges
Attorney for Defendants
E-mail: abridges@winston.com