Eric J. Benink, Esq., SBN 187434
Mary K. Wyman. Esq., SBN 260104
Krause Kalfayan Benink & Slavens, LLP
625 Broadway, Suite 635
San Diego, CA  92101
(619) 232-0331 (ph)
(619) 232-4019 (fax)
eric@kkbs-law.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>             Plaintiff,<br><br>      v.<br><br>GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive,<br><br>             Defendants. | CASE NO. 11-CV-0905 H (MDD)<br><br>**PLAINTIFF PERFECT 10, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO CHANGE VENUE**<br><br>DATE:     August 1, 2011<br>TIME:      10:30 a.m.<br>CTRM:    13<br>JUDGE:   Marilyn L. Huff<br><br>Demand for Jury Trial<br>Discovery Cut-Off Date:  None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

# **TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

II. STANDARDS ON MOTION TO TRANSFER VENUE UNDER SECTION 1404(a) .................................................................................... 4

III. DEFENDANTS FAIL TO ESTABLISH THAT THE BALANCE OF FACTORS STRONGLY FAVORS TRANSFER ................................. 5

    A. Venue is Proper in the Southern District and Plaintiff's Choice of Venue Should be Afforded Deference .............................. 5

    B. The Convenience of the Parties and Witnesses Favors Venue in the Southern District ........................................................... 7

        1. The Convenience of Witnesses Does Not Favor Transfer ................................................................................. 7

        2. The Convenience of the Parties Does Not Favor Transfer. ................................................................................. 11

    C. The Availability of Compulsory Process Does Not Favor Transfer ........................................................................................... 12

    D. The Relative Ease of Access of Proof Does Not Favor Transfer ........................................................................................... 13

    E. The Local Interest in the Dispute Does Not Favor Transfer ........................................................................................... 14

    F. The interests of Justice and Judicial Economy Do Not Favor Transfer ................................................................................. 14

IV. CONCLUSION ........................................................................................ 16

# TABLE OF AUTHORITIES

**CASES**

*Ainsworth v. Experian Information Solutions, Inc.*, 2011
    WL 2135713 at *2 (C.D.Cal. 2011) .................................................................. 6

*Bates v. C & S Adjusters, Inc.,* 980 F.2d 865 (2d Cir.1992) ................................... 4

*Bush v. Gherebi*, 542 U.S. 952(2004) .................................................................. 4, 5

*Callaway Golf Co. v. Corp. Trade, Inc.,* 2010 WL 743829, at *20
    (S.D.Cal.2010) ................................................................................................. 14

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834
    (9th Cir.1986) .................................................................................................... 5

*Doornbos v. Pilot Travel Centers LLC,* 2005 WL 6167730 at *3
    (S.D.Cal. 2005) ............................................................................................. 4, 8

*Ferrero Litigation*, 2011 WL 1814498 at *5 (S.D.Cal. 2011) .............................. 14

*Galonis v. National Broadcasting Co.*, Inc., 498 F.Supp. 789
    (D.C.N.H. 1980) ........................................................................................... 8, 12

*Gherebi v. Bush*, 352 F.3d 1278 (9th Cir.2003) ................................................. 4, 5

*Gonzales v. Palo Alto Labs, Inc.,* 2010 WL 3930440 (N.D.Cal. 2010) ................. 7

*Jones v. GNC Franchising, Inc.* 211 F.3d 495 (9th Cir. 2000) ................... 5, 12, 13

*Kabushiki Kaisha Stone Corp. v. Affliction, Inc.*, 2009 WL 3429560 at
    *2(N.D.Cal. 2009) ............................................................................................ 5

*Los Angeles Memorial Coliseum v. National Football League* 89 F.R.D.
    497 (C.D. Cal 1981) ......................................................................................... 4

*Nine Mile, Ltd.,* 692 F.2d 56 (8th Cir.1982) .......................................................... 5

*Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968) ..................... 6

*Panavision Intern.,L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) .................... 13

*Perfect 10, Inc. v. Amazon.com, Inc.* ................................................................... 15

*Roling v. E*Trade Securities, LLC,* 756 F.Supp.2d 1179 (N.D.Cal. 2010) ........... 5

*Saleh v. Titan Corp.*, 361 F.Supp.2d 1152 (S.D.Cal. 2005) .............................. 7, 8

*Steward Org. v. Ricoh Corp.*, 487 U.S. 22 (1988) ................................................. 4

*STX, Inc. v. Trik Stik, Inc.,* 708 F.Supp. 1551 (N.D.Cal.1988) ........................ 9, 12

*Van Dusen v. Barrack,* 376 U.S. 612 (1964) ...................................................... 4, 5

*Ventress v. Japan Airlines,* 486 F.3d 1111 (9th Cir.2007) ..................................... 6

*Williams v. Bowman*, 157 F.Supp.2d 1103 (N.D.Cal., 2001) ................................. 6

**STATUTES**

28 U.S.C. § 1391 ..................................................................................................... 5

28 U.S.C. § 1400 ..................................................................................................... 5

28 U.S.C. § 1404 .............................................................................................. 1, 6, 7

California Code of Civil Procedure ("C.C.P.") § 1989 ........................................ 13

**RULES**

Fed.R.Civ.P. 45(b)(2) ........................................................................................... 13

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendants Giganews, Inc. ("Giganews") and Livewire Services, Inc. ("Livewire") (collectively referred to as "Defendants") have filed a motion to transfer venue pursuant to 28 U.S.C. §1404(a). By Defendants' motion, we are confronted with an unusual situation in which Defendants attempt to disrupt Plaintiff Perfect 10, Inc.'s ("Perfect 10" or "Plaintiff") choice of venue in favor of a venue that is not home to Defendants, their offices, or their employees. Surprisingly, Defendants have little to no additional contacts to the proposed transferee district than to the current venue. Perhaps wishing to force this litigation up to the Central District where Defendants believe they will achieve a more favorable result, they attempt to disguise their request as being more convenient for both parties and the witnesses in this action. In fact, the Central District is at best equally convenient for Defendants, but is much less convenient for Plaintiff.

To prevail on their motion, Defendants must show that the balancing factors favor the Central District as a *substantially more convenient* forum for this action. Defendants fail to do so. The factors considered under a transfer of venue analysis are either neutral or lean in favor of the Southern District. This neutrality falls severely short of the standard set by the Ninth Circuit, in which a Defendant must make a *strong* showing of inconvenience in order to disrupt Plaintiff's choice of venue, in the following ways:

First, Defendants' claim that Plaintiff's choice of venue should be afforded little deference because it is not a resident of the Southern District. Defendants are incorrect. Plaintiff's choice should be afforded some deference despite the fact that it is not a resident of the Southern District because the claims at issue in this action have sufficient ties to the Southern District. Pursuant to client agreements that Defendants entered into with San Diego residents, San Diego residents are able to access a virtual warehouse containing

Perfect 10's copyrighted works.  These agreements enable users to download infringing materials to their personal computers within the Southern District.  Thus, the claims at issue are connected to the Southern District and must be afforded some deference to Plaintiff's choice of venue.

Second, Defendants argue that the convenience of the parties and the witnesses militates in favor of transfer.  Again, Defendants are mistaken.  Defendants reside outside the state of California.  Indeed, Defendants are not residents of the Central District, and have no offices, or employees in the Central District.  Defendants have no greater contacts to the Central District than to the Southern District and offer no reason why they would prefer to litigate there.[1]  Surprisingly, Defendants' argument, at its core, is really that it would be more convenient for Plaintiff to litigate in the Central District.  Defendants' courtesy for Plaintiff's convenience is noted, but from the outset, Perfect 10 has demonstrated its convenience through its decision to file in the Southern District and disputes any inconvenience on the part of it or its employees.  Indeed, the Southern District is less than 120 miles from the Central District and Perfect 10 believes it is a more convenient venue.

Additionally, the convenience of the witnesses is a neutral factor.  Many key witnesses in this action reside out-of-state, or internationally.  For example, Perfect 10's only active photographer lives in Czechoslovakia and the photographer from which Perfect 10 has purchased thousands of images lives in Spain.  Declaration of Dr. Norman Zada in Opposition to Defendant's Motion to Change Venue, filed concurrently ("Zada Decl. Venue") ¶7.  As they may be forced to travel to California regardless of the district that is ultimately chosen,

---

[1] Defendants claim that they have servers in Los Angeles, but do not disclose either their exact location or what relevant information, if any, those servers contain.  Plaintiff contends that Defendants' servers are mainly in Texas, and Defendants admit that their servers are housed all over the world.  (Dft. Brf. 2:5-10).

1   their convenience is a neutral factor.  In support of their motion, Defendants
2   have chosen to name eight specific California residents that are allegedly
3   necessary witnesses in this action.  Many of the eight witnesses listed by
4   Defendants are Perfect 10 employees and should not be considered in a witness
5   convenience analysis.  Zada Decl. Venue ¶8.  The remainder of the Los Angeles
6   residents can be compelled to testify in the Southern District and it cannot be
7   shown that they would be severely inconvenienced by testifying at a court less
8   than 120 miles away.  Additionally, the most essential witness in this action is
9   Perfect 10's President, Dr. Norman Zada.  Dr. Zada believes that the Southern
10  District is the most convenient forum for this action

11          Similarly, the ease of access of proof is a neutral factor as the majority of
12  the evidence that would be presented in this case is accessible electronically via
13  the Internet.  Further, Defendants claim that they have servers all over the world.
14  As such, the ease of access to these servers remains the same in the Southern and
15  Central Districts.

16          Last, judicial economy favors the Southern District as Plaintiff has
17  experienced firsthand the speed of litigation in each forum.  In Plaintiff's
18  experience, the Central District's docket congestion is an impediment in the
19  litigation process.  For example, Perfect 10 only has one case pending in the
20  Central District.  Perfect 10 has been litigating this case in the Central District
21  for nearly **seven years** and has never been given a trial date.  Further, in a
22  previous case, the Central District took over **fourteen months** and still had not
23  ruled on cross Motions for Summary Judgment, at which point the case settled.
24  Zada Decl. Venue ¶¶10-11, Exh. 4.  Additionally, the Southern District has
25  presided over five other cases filed by Perfect 10[2] that assert similar claims,
26  including one case previously before this Court.  As such, this Court is far more

27  ───────────────
28  [2] Two of these cases settled and one resulted in a default judgment.

1 familiar with this type of direct infringement case. In fact, no active Judge in the
2 Central District has presided over a similar case brought by Perfect 10. This
3 factor clearly weighs against transfer. Zada Decl. Venue ¶12.

4     As the majority of the factors comprising the venue transfer analysis are
5 either neutral or lean in favor of the Plaintiff, Defendants have failed to achieve
6 a showing that the Central District is a <u>more convenient</u> forum – a showing that
7 the Central District is equally convenient simply will not suffice. Thus, Plaintiff
8 respectfully requests the Court deny Defendants' motion.

## II.   STANDARDS ON MOTION TO TRANSFER VENUE UNDER SECTION 1404(a)

11     A motion to transfer may be granted if (1) the transfer is proposed to a
12 district in which the action might have been brought, and (2) transfer would
13 further the interests of justice by making the litigation <u>more convenient</u> for the
14 parties and witnesses. 28 U.S.C. §1404(a) (emphasis added). It is the moving
15 party's burden to demonstrate that the action should be transferred. *Los Angeles*
16 *Memorial Coliseum v. National Football League* 89 F.R.D. 497, 499 (C.D. Cal
17 1981). The decision is left to the sound discretion of the Court. *Steward Org. v.*
18 *Ricoh Corp.*, 487 U.S. 22, 29 (1988).

19     To be successful in a motion to transfer venue, the moving party must
20 demonstrate that the transferee district is <u>more convenient</u>, not merely equally
21 convenient. *Van Dusen v. Barrack,* 376 U.S. 612, 646 (1964) (emphasis added).
22 Indeed, "the court is not required to 'determine the best venue.'" *Gherebi v.*
23 *Bush*, 352 F.3d 1278, 1303 (9th Cir.2003), vacated on other grounds *Bush v.*
24 *Gherebi*, 542 U.S. 952, 1303 (2004); quoting *Bates v. C & S Adjusters, Inc.,* 980
25 F.2d 865, 867 (2d Cir.1992). Thus, a "transfer should not be granted if the effect
26 is simply to shift the inconvenience to the party resisting the transfer." And
27 transfer should not be granted freely. *Doornbos v. Pilot Travel Centers LLC,*
28 2005 WL 6167730 at *3 (S.D.Cal. 2005) citing *Van Dusen v. Barrack,* 376 U.S.

Plaintiff Perfect 10's Opposition To Defendants' Motion To Change Venue

612, 646 (1964); *Kabushiki Kaisha Stone Corp. v. Affliction, Inc.*, 2009 WL 3429560 at *2(N.D.Cal. 2009); *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir.2003), vacated on other grounds *Bush v. Gherebi*, 542 U.S. 952, 1302-1303 (2004) citing *In re Nine Mile, Ltd.,* 692 F.2d 56, 61 (8th Cir.1982).

### III. DEFENDANTS FAIL TO ESTABLISH THAT THE BALANCE OF FACTORS STRONGLY FAVORS TRANSFER

Defendants allege that the Central District could have been a proper venue for this action. (Dft. Brf. 5:27-6:2) This, however, is not sufficient to justify a transfer of venue. Rather, Defendants must show that the Central District is a <u>more convenient</u> forum for the parties. *Van Dusen v. Barrack,* 376 U.S. 612, 646 (1964). Defendants fall severely short of this showing.

At most, Defendants have shown that the Central District is equally as convenient (for them) for this litigation. This, however, is not enough to compel a transfer of venue. Indeed, "the defendant must make a <u>strong showing</u> of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir.1986).

#### A. Venue is Proper in the Southern District and Plaintiff's Choice of Venue Should be Afforded Deference

One factor the court weighs when determining if a transfer is appropriate is the Plaintiff's choice of venue. *Jones v. GNC Franchising, Inc.* 211 F.3d 495, 498 - 499 (9th Cir. 2000). Venue is proper in the Southern District. 28 U.S.C. § 1391(b)(2), (c), and §1400(a). As such, Plaintiff's choice should be accorded deference. *Roling v. E*Trade Securities, LLC,* 756 F.Supp.2d 1179, 1185 (N.D.Cal. 2010).

Defendants argue that Perfect 10 has minimal contacts to the Southern District and therefore its choice of venue should not be given much weight. (Dft. Brf. 6:26-8:24). But even if Plaintiff's choice is given less weight than if it was a resident of the Southern District, their choice is far from meaningless.

*Williams v. Bowman*, 157 F.Supp.2d 1103, 1107 (N.D.Cal., 2001) (stating that even though Plaintiff was not a resident of the district, the choice should be given some deference); *Ainsworth v. Experian Information Solutions, Inc.*, 2011 WL 2135713 at *2 (C.D.Cal. 2011). The court is directed to "consider the relationship between the forum and the <u>plaintiff's claims</u> when deciding whether to transfer a case under 28 U.S.C. § 1404" and should transfer only in cases where it finds "no significant connection between [the forum] and the <u>facts alleged</u> in the complaint." *Ventress v. Japan Airlines,* 486 F.3d 1111, 1118 (9th Cir.2007) (emphasis added).

Defendants rely on *Pacific Car & Foundry Co. v. Pence* for the proposition that Plaintiff's choice is entitled to only minimal deference. This reliance is misplaced. In *Pacific Car*, the Court held that "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954-955 (9th Cir. 1968). The Court reasoned that while Plaintiff conducted business in Hawaii, the chosen forum state, these transactions did not deal with Defendant, rather Plaintiff and Defendant conducted business transactions only in Australia. The court stated that Plaintiff's injury had nothing to do with the forum state and was suffered in Australia. *Id*.

Here both Perfect 10 and Defendants have contacts with this district and Plaintiff's injuries were suffered inside the borders of the Southern District. Defendants entered into agreements with Southern District residents in the form of monthly subscriptions – a fact that is undisputed by Defendants.[3] These agreements enable Defendants to generate substantial revenue from users

---

[3] Defendants claim to have 10 million members worldwide, suggesting that they have made **billions of dollars** selling access to copyrighted materials without paying the rightful owners. Zada Decl. Venue ¶3, Exh. 1.

1 residing in this district by offering to them billions of dollars worth of
2 copyrighted material, millions of dollars of which rightfully belongs to Plaintiff.
3 Under the user agreements, the users are able to download infringing material
4 directly to their computers located in the Southern District.  Thus, the
5 agreements and Defendants' sale of the infringing materials to their users
6 provide the necessary connection between the Southern District and the claims
7 in this action.  Additionally, Perfect 10 sells its services to Southern District
8 residents and competes against Defendants for their business.

9 Defendants' reliance on *Gonzales v. Palo Alto Labs, Inc.* is unpersuasive.
10 The Court in *Gonzales* held that the case should be transferred to the district in
11 which Defendant and his counsel resided in because the only evidence Plaintiff
12 presented was that Defendant marketed its product throughout California and
13 conducted business through its advertising. *Gonzales v. Palo Alto Labs, Inc.*,
14 2010 WL 3930440 (N.D.Cal. 2010).  Thus, the Court reasoned that there was no
15 *specific* connection to the chosen venue. *Id*.  As described above, Perfect 10 and
16 Defendants sell their services to residents in the Southern District.  Through
17 Defendants' agreements with these residents, Perfect 10 has been directly
18 injured in the Southern District.   As such a nexus exists, Plaintiff's choice of
19 venue is not nominal and should be afforded deference.

20     **B.**     **The Convenience of the Parties and Witnesses Favors Venue in**
21           **the Southern District**
22         **1.**     **The Convenience of Witnesses Does Not Favor Transfer**

23 "The relative convenience to the witnesses is often recognized as the
24 most important factor to be considered in ruling on a motion under § 1404(a)."
25 *Saleh v. Titan Corp.,* 361 F.Supp .2d 1152, 1160-1161 (S.D.Cal. 2005).  To
26 determine the "convenience of the witnesses, the Court must examine the
27 materiality and importance of the anticipated witnesses' testimony and then
28 determine their accessibility and convenience to the forum." *Doornbos v. Pilot*

*Travel Centers LLC,* 2005 WL 6167730 at *3 (S.D.Cal. 2005). Importantly, it is not the number of witnesses that is considered, but the quality and importance of their testimony. *Saleh v. Titan Corp.*, 361 F.Supp.2d 1152, 1161 (S.D.Cal. 2005) ("the court must consider not simply how many witnesses each side has and the location of each, but, rather, the court must consider the importance of the witnesses"). To meet their burden, Defendant must "clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Doornbos v. Pilot Travel Centers LLC,* 2005 WL 6167730 at *3 (S.D.Cal. 2005).

In an attempt to meet this burden, Defendants list eight witnesses that they allege are essential to this litigation. (Dft. Brf. 10:4-13:27). Four of the eight witnesses are Perfect 10 employees or party-affiliated witnesses.[4]  Zada Decl. Venue ¶8. As such, Defendants are, in essence, arguing that it is more convenient for Perfect 10, and those working on its behalf, to litigate in the Central District. On the contrary, Perfect 10's employees and independent contractors regularly travel for Perfect 10's business and find the Southern District to be a convenient forum. *See* Declarations of Melanie Poblete, Sheena Chou, and Gwendalyn Augustine in Support of Plaintiff Perfect 10 Inc.'s Opposition to Defendants' Motion to Change Venue, filed concurrently.

Furthermore, the convenience of the parties' employees should not be given much weight in the determination of witness convenience. *Galonis v. National Broadcasting Co.,* 498 F.Supp. 789, 793 (D.N.H.1980) (discounting inconvenience to party's witnesses when they are employees who can be compelled to testify); *STX, Inc. v. Trik Stik, Inc.*, 708 F.Supp. 1551, 1556

---

[4] Defendants incorrectly suggest that Eileen Koch, Perfect 10's *former* publicist, is still with Perfect 10 and is essential to the litigation; but Ms. Koch was laid off in 2004, and therefore possesses no information relevant to the claims at issue in this case. Zada Decl. Venue ¶8.

1  (N.D.Cal. 1988).  Thus, the convenience of Perfect 10 employees Melanie
2  Poblete and President Dr. Norman Zada are not important factors.
3      Defendants list only three witnesses who are not associated with Perfect
4  10, Amber Smith, Amy Weber, and Irina Voronina.  Defendants claim that these
5  witnesses are residents of Los Angeles and therefore the convenience of
6  witnesses as a whole favors the Central District.  (Dft. Brf. 10:27-12:1)  Plaintiff
7  disputes that these witnesses are essential to the litigation.  Rather, Defendants
8  chose these three models (most likely because they believe the models reside in
9  Los Angeles and therefore are favorable to their motion) out of over 800 models
10 for which Perfect 10 owns copyrights.  Any of these 800 models could be
11 witnesses in this action. [5]  Zada Decl. Venue ¶7.  However, even if Mses. Smith,
12 Weber, and Voronina are called to testify, Defendants overlook the fact that the
13 Southern District is less than 120 miles away from Los Angeles, the purported
14 home of these witnesses.  Zada Decl. Venue ¶8.  Any inconvenience these few
15 witnesses would suffer would be minimal.
16     Surprisingly absent from Defendants' list of essential witnesses are any
17 employees, officers, directors, or agents of Giganews or Livewire.  Defendants
18 only listed as essential witnesses, Perfect 10 employees and others persons who
19 might testify on Perfect 10's behalf.   Defendants did not list Giganews'
20 principals, Ronald Yokubaitis, Carolyn Yokubaitis, and Jonah Yokubaitis, or
21 Livewire's President, Scott Burnett, (or any other person who might testify on
22 behalf of Defendants).  Perfect 10 believes these individuals are key witnesses in
23 this action as they are knowledgeable about Defendants' network and operations.
24 Zada Decl. Venue ¶6.  Perfect 10 also believes that individuals who uploaded
25 Perfect 10's images to Defendants' servers (if such individuals exist), are

---

[5] Defendants filed a Motion to Dismiss on June 22, 2011 in which they attempt to dismiss Perfect 10's rights of publicity claims.  If successful, testimony from these models would be irrelevant.

Plaintiff Perfect 10's Opposition To Defendants' Motion To Change Venue

essential witnesses in this action. These individuals were not identified by Defendants and are currently unknown. Zada Decl. Venue ¶6.

These omissions are likely due to the fact that Defendants, and the majority of their employees, officers, directors, and agents live in Texas, Nevada, or elsewhere outside California and they will have to travel to California regardless of which district ultimately hears this case. Zada Decl. Venue ¶6. For these witnesses, the Central District is not a more convenient venue – it is neutral.

Defendants also overlook the fact that some necessary witnesses reside in San Diego. For example, most of the images in Perfect 10's first DMCA notice, dated March 25, 2009, which Defendants continue to contest, were purchased from Online Creations, LLC, in San Diego. Consequently, there are essential witnesses that reside in Southern District. Zada Decl. Venue ¶5, Exh. 3.

Further, Defendants overlook the fact that the primary witness for Perfect 10 will be Dr. Norman Zada. Due to overwhelming financial losses, Perfect 10 was forced to lay off most of its employees years ago. Dr. Zada is the only employee who has been with Perfect 10 since its inception in 1996 and has been involved in every aspect of the business. Indeed, Dr. Zada directly hired all models and photographers, selected every photograph that appeared in the magazine, and approved of every business transaction. Dr. Zada is also actively involved in dealing with websites that illegally provide infringing material to their users. He drafted and sent each of the more than twenty-six Perfect 10 notices to Defendants. Dr. Zada is intimately familiar with every aspect of Perfect 10's business. Dr. Zada believes the Southern District is a substantially more convenient forum for this action. Zada Decl. Venue ¶¶9, 1.

Moreover, many necessary witnesses live outside Los Angeles, California, and even the United States. Indeed, many models and photographers that Perfect 10 might call to provide testimony in this action live outside both the

1. Southern and Central Districts. For example, Perfect 10's only current active photographer, Roman Sluka, lives in Czechoslovakia and Perfect 10 purchased tens of thousands of images from Petter Hegre, who lives in Spain. Most of Perfect 10's models live in the Czech Republic or in Russia. Zada Decl. Venue ¶7. For these witnesses, traveling to the Central District is <u>no more convenient</u> than traveling to the Southern District.

Again, Defendants fail to meet their burden and show that the Central District is more convenient for the witnesses.

### 2. The Convenience of the Parties Does Not Favor Transfer

As discussed above, Defendants and their employees reside mainly in Texas, Nevada, or elsewhere outside of California. Indeed, Defendants have admitted that they have no offices, facilities, employees, leases, or equipment of any kind in the Central District. (Dft. Brf. 2:10-14) They admittedly have no greater of a connection to the Central District than to the current venue. To litigate this action, Defendants will be required to travel to California regardless of which district is chosen in California.

Additionally, Defendants have asserted that Giganews' servers are stationed in cities throughout the world, including Los Angeles. (Dft. Brf. 2:7-8) But Defendants have provided no information regarding the importance of their alleged server in Los Angeles to this action, its exact location, or what relevant information, if any, is held on the Los Angeles server. The primary servers for Defendants are located in Austin, TX. Zada Decl. Venue ¶4, Exh. 2. This minimal connection to Los Angeles is not sufficient to show that the Central District is more convenient for Defendants.

Unable to show that the Central District is more convenient for them, Defendants' argument, at its core, is that this action is more convenient for Perfect 10 to litigate in the Central District because it resides there. Perfect 10 obviously disagrees; it finds the Southern District to be convenient, which is

Plaintiff Perfect 10's Opposition To Defendants' Motion To Change Venue

1  evidenced by its choice to file there.  *Galonis v. National Broadcasting Co.*, Inc.,
2  498 F.Supp. 789, 793 (D.C.N.H. 1980) ("Plaintiffs' convenience is evidenced by
3  their choice of forum in filing these [ ] actions in New Hampshire.').

4  As discussed above, Perfect 10 and its employees do not find the Central
5  District to be more convenient and would prefer to litigate in their chosen
6  district.  Even though the location of Plaintiff's counsel is not a factor to be
7  considered in this analysis, it does evidence Perfect 10's convenience in the
8  Southern District.  Indeed, Perfect 10's **only active attorney** resides in the
9  Southern District.  It would be extraordinarily expensive, time-consuming, and
10 inconvenient for Perfect 10 litigate this action in the Central District while
11 litigating two similar cases in the Southern District.  Zada Decl. Venue ¶9.

12 While Perfect 10 appreciates Defendants' concern for its convenience, if
13 Perfect 10 wishes to litigate in the Southern District, which is no less convenient
14 than the Central District for Defendants, then it should be allowed to do so.

15 **C.  The Availability of Compulsory Process Does Not Favor**
16 **Transfer**

17 Another factor to be weighed is the availability of the compulsory process
18 to secure witness attendance at trial.  *Jones v. GNC Franchising, Inc.* 211 F.3d
19 495, 498 - 499 (9th Cir. 2000).  This factor is also neutral.

20 The compulsory process to compel party and non-party witnesses at trial
21 is identical regardless of where venue lies within California.  In this action, the
22 parties' employees comprise many of the expected witnesses.  These employees
23 can be compelled to testify at trial in either venue.  *STX, Inc. v. Trik Stik, Inc.,*
24 708 F.Supp. 1551, 1556 (N.D.Cal.1988) ("defendant's claim that defense
25 witnesses could not be expected to appear at trial must be discounted since at
26 least four of the six witnesses are defendant's employees whom defendant can
27 compel to testify").
28 For non-party witnesses, the Court's subpoena power extends to anywhere

Plaintiff Perfect 10's Opposition To Defendants' Motion To Change Venue

1  within the district and one hundred miles of the place of trial.  Fed.R.Civ.P.
2  45(b)(2).  Additionally, Fed.R.Civ.P. 45(b)(2)(c) allows a federal court to
3  "borrow" subpoena power of the state court in the state where it sits.
4  Fed.R.Civ.P. 45(b)(2)(c).  Pursuant to California Code of Civil Procedure
5  ("C.C.P.") § 1989, a person who is a resident of California may be subpoenaed
6  to appear and testify in any court in the state and is subject to no mileage limit.
7  C.C.P. §1989.  Thus, the parties have the same subpoena rights in the Southern
8  District that they do in the Central District – they can compel any California
9  resident to appear.  As for witnesses located outside of California, the process
10 and requirements will likewise be identical for the parties regardless of which
11 venue hears the case.  As such, this factor is neutral and does not warrant a
12 transfer of venue.

### D. The Relative Ease of Access of Proof Does Not Favor Transfer

The relative ease of the access of proof is another factor that is considered in the venue transfer analysis.  *Jones v. GNC Franchising, Inc.* 211 F.3d 495, 498 - 499 (9th Cir. 2000).   Although Defendants focus on the ease of access to Perfect 10's witnesses and evidence, this case is really about Defendants' acts committed by its employees and through its computer servers.  Thus, it is Defendants' witnesses and evidence that deserves the focus in this analysis.

This is a case involving copyright infringement occurring on Defendants' computer servers.  It involves little to no physical evidence.  Almost all of the required evidence will be found in electronic form on Defendants' servers and is equally accessible in the Southern District.  See *Panavision Intern.,L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (stating that in this era of fax machines, requiring an out-of-state defendant to litigate in California is not constitutionally unreasonable).   Indeed, Defendants' business allows parties to easily share electronic documents with ease.  It seems that producing substantial documents in the Southern District electronically is perfectly suited for this

1 action.

2 Defendants claim that they house servers in Los Angeles, however
3 Defendants fail to articulate the importance of these servers, or their exact
4 location. As Defendants claim that they house servers all over the world and
5 their primary servers are in Austin, TX, Defendants have not shown that any of
6 their substantial evidence is located exclusively in the Central District. Zada
7 Decl. Venue ¶4, Exh. 2.

### E. The Local Interest in the Dispute Does Not Favor Transfer

As discussed above, the claims at issue in this action took place in the Southern District through the client agreements Defendants entered into with Southern District residents. Additionally, the claims at issue concern Defendants selling access to copyrighted materials to these users in the Southern District. For this reason, the resident of the Southern District have an interest in protecting Plaintiff, and other similarly situated companies, from Defendants' illegal activities.

### F. The interests of Justice and Judicial Economy Do Not Favor Transfer

"An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum." *Callaway Golf Co. v. Corp. Trade, Inc.,* 2010 WL 743829, at *7 (S.D.Cal.2010). Additionally, centralizing the adjudication of similar cases will also avoid the possibility of inconsistent judgments." *In re Ferrero Litigation*, 2011 WL 1814498 at *5 (S.D.Cal. 2011) quoting *Callaway Golf Co. v. Corp. Trade, Inc.,* 2010 WL 743829, at *20 (S.D.Cal.2010).

Defendants argue that the Central District is more convenient because it is familiar with this type of action. (Dft. Brf. 14:8-18) This is completely incorrect. In fact, the Southern District is much more familiar with this type of action. Indeed, Perfect 10 only has one case pending in the Central District, a

Plaintiff Perfect 10's Opposition To Defendants' Motion To Change Venue

case brought against Google nearly seven years ago, and unlike the current action, it is not a direct infringement case against a paysite. Currently, there are no active judges in the Central District that have ever presided over a similar Perfect 10 case. Zada Decl. Venue ¶12

On the other hand, Perfect 10 has filed six similar cases in the Southern District that involve direct infringement claims – the claims that are at issue in this action. Zada Decl. Venue ¶12. In particular, this Court presided over a case with similar claims, that Perfect 10 filed against RapidShare.com, a website similar in operation to Defendants.[6] Thus, the Southern District is substantially more familiar with this type of direct infringement case and is the favorable venue for this action.

Defendants also claim that a trial will be speedier in the Central District because the median time between the filing of a civil case and the trail was less than the Southern District. (Def. Brf. 14:19-28) However, Plaintiff has experienced firsthand just the opposite. For example, Plaintiff is involved in litigation in the Central District that was initiated in **2004** and still has not received a trial date. Indeed, in *Perfect 10, Inc. v. Amazon.com, Inc., et al.*, Case No.: CV 05-04753 AHM (SHx) in the Central District, the Court informed Perfect 10 **twelve months** after the hearing date for Perfect 10's Motion for Partial Summary Judgment, that the Court had not been able to turn to Perfect 10's Motion for a "lengthy period of time" because of the court's heavy trial calendar, vacancies in the Central District, the staggering increase in civil filings, amongst other reasons." Zada Decl. Venue ¶¶10-11, Exh. 4. Thus, it

---

[6] The primary difference between the case against Rapidshare and the current litigation is that Giganews and Livewire's actions are more egregious. Indeed, Defendants copy much of their infringing material from the Internet, do not offer any free materials, and allow users to search their servers for the copyrighted material.

Plaintiff Perfect 10's Opposition To Defendants' Motion To Change Venue

does not necessarily hold true that the Central District will provide for a speedier resolution, especially in cases similar to the instant action.

## IV.     CONCLUSION

Defendants are required to demonstrate a strong showing of inconvenience to warrant upsetting Plaintiff's choice of venue.  As detailed in factor after factor above, Defendants fall sorely short of meeting this burden.  In fact, Defendants have provided no evidence that the Central District would be more convenient for them.  At best, Defendants have shown that the Central District is as convenient of a forum **for them** as the Southern District.  This is insufficient.  As such, Plaintiff respectfully requests that its choice of venue be accorded some deference and that Defendants' Motion to Change Venue be denied.

Dated:  July 18, 2011                         KRAUSE KALFAYAN BENINK & SLAVENS, LLP.

By: */s/ Eric J. Benink*
Eric J. Benink
Attorneys for Plaintiff