Andrew P. Bridges (SBN 122761)
Jennifer Golinveaux (SBN 203056)
K. Joon Oh (SBN 246142)
Thomas J. Kearney (SBN 267087)
**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA  94111-5802
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400

Attorneys for Defendants
GIGANEWS, INC. and LIVEWIRE SERVICES, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, | Case No. 11-CV-0905 H (MDD) |
| Plaintiff, | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO CHANGE VENUE** |
| vs. | |
| GIGANEWS, INC., a Texas corporation; LIVEWIRE SERVICES, INC., a Nevada corporation; and DOES 1 through 100, inclusive, | **DATE:** August 29, 2011<br>**TIME:**  10:30 a.m.<br>**Hon. Marilyn L. Huff**<br>**COURTROOM 13 – Fifth Floor** |
| Defendants. | **Special Briefing Schedule Ordered**<br><br>**[Supporting Declarations of Thomas J. Kearney and Philip Molter Filed Concurrently]** |

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ....................................................................................................................1

II. Perfect 10 Concedes that Relevant Contacts Are with the Central District. ..............................2

    A. The Relevant Party Contacts Are in the Central District. ...............................................2

    B. Perfect 10 Fails to Identify Any Relevant Contacts with the Southern District. ...........3

III. Perfect 10 Cannot Identify Any Witnesses in the Southern District. .......................................4

IV. Every Witness in the Central District Will Be Inconvenienced by Perfect 10's Choice of Forum. .....................................................................................................................................5

V. Perfect 10 Fails to Offer Any Legitimate Justification for Litigating This Case in the Southern District. ........................................................................................................................7

    A. The Location of Perfect 10's Counsel Does Not Justify Keeping This Case in the Southern District. ...............................................................................................................7

    B. Perfect 10's Forum Shopping Should Not Be Rewarded. ..............................................8

    C. Perfect 10 Mischaracterizes Its Ongoing Similar Lawsuit Against Google. .................9

VI. CONCLUSION .......................................................................................................................10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACLU v. Reno*,
   929 F. Supp. 824 (E.D. Pa. 1996) ...................................................................................3

*Gonzales v. Palo Alto Labs, Inc.*,
   No. C 10-2456, 2010 WL 3930440 (N.D. Cal. Oct. 6, 2010)........................................4

*Pacific Car & Foundry Co. v. Pence*,
   403 F.2d 949 (9th Cir. 1968) .........................................................................................7

*Perfect 10, Inc. v. Google, Inc.*,
   No. 10-56316, 2011 WL 2581974 (9th Cir. April 11, 2011).............................7, 8, 9

*Perfect 10, Inc. v. Kalmet Investments Ltd.*,
   No. 11-cv-1416 (filed June 28, 2011) ............................................................................9

## I. INTRODUCTION

As Perfect 10's opposition to this motion makes clear, this case has no connection with the Southern District other than the location of Perfect 10's lawyer for this case and Perfect 10's desire to litigate away from the Central District where it has brought 24 cases. Neither reason justifies keeping the case in the Southern District. It would undoubtedly be more convenient for the parties and witnesses for this litigation to be in the Central District, which also has the advantage of years of experience with Perfect 10's unusually convoluted copyright cases.

After discounting (without basis) the importance of the numerous witnesses Defendants have identified in the Central District, Perfect 10 points to a *sole "witness"* that it claims to reside in the Southern District, On Line Creations, Inc. Perfect 10 claims to have acquired some of the images at issue from it. Zada Opp. Decl. ¶ 5. The address for the business that Perfect 10 provides as its only evidence that Online Creations is in the Southern District, however, is the location of a "La Jolla Shores Postal and Shipping" store that advertises itself as a "small shipping and packing store" with "a separate room with post office boxes that customers can access 24 hours a day." Tore Kesicki, who signed the agreement by which Perfect 10 allegedly acquired the images on behalf of On Line Creations, resides in New Jersey.

Unable to identify any credible and relevant connection between this case and the Southern District, Perfect 10 instead attempts to change the standard required for transfer pursuant to 18 U.S.C. § 1404(a), and argues that Defendants fail to establish that the balance of the factors "strongly" favors transfer. Not surprisingly, Plaintiff cites no authority to support that standard. As indicated in Defendant's opening brief, while a plaintiff's choice is entitled to some deference, that deference is much less where, as here, Plaintiff does not reside in the forum. Venue Mot. at 6-7.

This case has many connections to the Central District and no relevant connections to the Southern District. It would undoubtedly be more convenient for the parties and witnesses for this case to be in the Central District. Because the convenience of witnesses and the interest of justice favor transfer, Defendants respectfully request that the Court grant this motion.

///
///

1

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO CHANGE VENUE   CASE NO. 11-CV-0905

## II. PERFECT 10 CONCEDES THAT RELEVANT CONTACTS ARE WITH THE CENTRAL DISTRICT.

Perfect 10 insists that that "this case is really about Defendants' acts committed . . . through its computer servers." Opp. at 13:16-18. Accordingly, any alleged infringement would have occurred in the Central District (if anywhere in California) and not in the Southern District. Defendants do not maintain any servers or equipment in the Southern District. Perfect 10 does not argue otherwise but instead (without any factual support) speculates that Defendants' "primary servers" are actually in Texas, and it concludes that this means the Southern District is just as good as any other venue in California. As explained below, Perfect 10 is wrong, and its error reflects its fundamental misunderstanding of Usenet. The *only* contact Perfect 10 can point to with the Southern District (though without any specific support) is that both Plaintiff and Defendants presumably have some subscribers that reside in the Southern District. **There is no allegation or evidence of any claimed actual infringement in the Southern District.** The relevant California contacts are all with the Central District.

### A. The Relevant Party Contacts Are in the Central District.

Perfect 10 does not dispute that the location of the intellectual property at issue in this case is in the Central District, where Perfect 10, its principal Norman Zada, and all of its employees, are located. Venue Mot. at 6:9-15.

Perfect 10 has also specifically alleged that infringement, if any, takes place on Defendants' servers. *See, e.g.*, Compl. ¶ 25 ("Defendants store the infringing materials **on their servers**") (emphasis added). Indeed, Perfect 10 itself insists that "this case is really about Defendants' acts committed . . . **through its computer servers.**" Opp. at 13:16-18 (emphasis added). Defendants' only California servers are located in the Central District; Defendants do not own any servers, or any other equipment, in the Southern District. (Molter Decl. to Venue Mot. ¶¶ 6, 8; Yokubaitis Decl. to Venue Mot. ¶4).

The fact that Perfect 10 might be ignorant of the location of Defendants' servers is irrelevant. *See, e.g.*, Zada Opp. Decl. ¶ 4 ("I am not aware of any giganews.com webpage which indicates that any of Giganews' primary servers are in Los Angeles"). Worse, Perfect 10 actively misrepresents

2

Defendants' statements about their servers.  *Compare* Opp. at 11:11-14 ("Defendants have admitted that they have no . . . equipment of any kind in the Central District"); *with* Molter Decl. to Venue Mot. ¶ 6 ("Giganews maintains servers in various locations around the world, including downtown Los Angeles, California").  Perfect 10 elsewhere concedes that Defendants may have servers in Los Angeles, but complains that Defendants have not "disclose[d] their exact location." Opp. at 2 n.1.[1]

Perfect 10 also speculates that Defendants' "primary servers" are actually in Texas.  Opp. at 11.  As support, Dr. Zada points to the contact address for a third party, Data Foundry.  Zada Opp. Decl. ¶ 4, Exh. 2.  Not only does a company's mailing address have nothing to do with the location of its servers, but Giganews does not use Data Foundry's servers.  It merely licenses certain IP addresses from Data Foundry for Giganews's *websites,* none of which are used for Defendants' Usenet servers.  Giganews does not maintain Usenet servers in Texas.  Molter Reply Decl. ¶ 5.  Thus, not only is Perfect 10 dead wrong, but this demonstrates Perfect 10's fundamental—and perhaps deliberate— misunderstanding of Usenet and how it works.  Perfect 10 repeatedly confuses Giganews's website (simply an ordinary business website where a Giganews subscriber can manage information about his or her subscription) with Usenet itself (a vast, worldwide collection of online discussion forums "cover[ing] all imaginable topics of interest").  *ACLU v. Reno*, 929 F. Supp. 824, 834 (E.D. Pa. 1996), *aff'd sub nom. Reno v. ACLU*, 521 U.S. 844 (1997).  This is a basic mistake, similar to believing that AT&T's website (which subscribers can use to pay phone bills, manage billing information, or order telephone service) is the same as AT&T's telephone network.  What Dr. Zada erroneously calls "primary servers" are merely web servers that are not part of Usenet and are not used to offer Usenet service.  If Giganews's web servers were disabled, that would not affect Giganews' ability to provide Usenet service—any more than disabling AT&T's website would affect its ability to provide telephone service.  Molter Reply Decl. ¶ 6.

### B.   Perfect 10 Fails to Identify Any Relevant Contacts with the Southern District.

Perfect 10 alleges vaguely that it has suffered injury in the Southern District because Defendants likely have subscribers there, and because some of those subscribers "are able" to

---

[1] Perfect 10 emphasizes that Defendants do not disclose "the exact location" of their Los Angeles servers — as if the street address were a key fact.  For the record, Giganews's servers are located at 600 West 7th Street, Los Angeles, California 90017.  Molter Reply Decl. ¶ 7.

3

1  download infringing material.  Opp. at 6-7.[2]  Perfect 10 does not allege that any subscribers have

2  actually downloaded infringing material, does not allege any specific infringements, and does not

3  identify a single alleged direct infringer in the Southern District.

4        Perfect 10 also claims that Perfect 10 "sells its services to Southern District residents," but it

5  does not offer any facts to support the claim.  Perfect 10 does not allege that it advertises or markets

6  its products in the Southern District.  The mere fact that Perfect 10 has a website does not provide a

7  nexus to the Southern District.  By this logic, venue would be equally proper anywhere in the United

8  States – indeed, anywhere in the world.  Such a test is contrary to established case law.  A plaintiff

9  must instead show that its choice of venue is supported by a "specific connection" to the venue.

10  *Gonzales v. Palo Alto Labs, Inc.*, No. C 10-2456, 2010 WL 3930440, *8 (N.D. Cal. Oct. 6, 2010).

11  A lack of such specific connection "favor[s] transfer."  *Id.*  Because Perfect 10 lacks such specific

12  connection to the Southern District, the Court should transfer the case to the Central District, which

13  has multiple specific connections to Perfect 10, its claims in this case, and Defendants.

### III. PERFECT 10 CANNOT IDENTIFY ANY WITNESSES IN THE SOUTHERN DISTRICT.

16        In contrast to the numerous important witnesses Defendants have identified in the Central

17  District, Perfect 10 fails to identify even a single witness in the Southern District.

18        Perfect 10 claims that a company called On Line Creations, Inc. resides in San Diego and,

19  therefore, "there are essential witnesses that reside in [sic] Southern District."  Opp. at 10; Zada Opp.

20  Decl. ¶ 5.  Perfect 10's information appears long outdated and inaccurate.

21        On Line Creations purportedly owns the Mac & Bumble website at

22  www.macandbumble.com.  Zada Opp. Decl. ¶ 5.  Perfect 10 claims to have purchased from On Line

23  Creations the copyright to a number of the images on which Perfect 10 bases its claims against

24  Defendants.  Perfect 10 attaches in a single exhibit several miscellaneous web pages purporting to

25  show an address for On Line Creations of 8070 La Jolla Shores Drive PMB 345.  *Id.*  That address,

26  however, is currently listed to a "La Jolla Shores Postal and Shipping" store that advertises itself as a

---

[2] Perfect 10's speculation regarding Defendants' revenue, Opp. at 6, n. 3, like other speculation in Perfect 10's opposition, is wildly inaccurate.

4

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1  "small shipping and packing store" with "a separate room with post office boxes that customers can
2  access 24 hours a day." Kearney Reply Decl. ¶ 2. According to California state records, On Line
3  Creations Inc. is located not in La Jolla, but at 19 Cypress Pt., Pekin, Illinois. Kearney Reply Decl.
4  ¶ 3. Furthermore, On Line Creations is a suspended California corporation, whose agent for service
5  of process resigned more than two years ago. *Id.* On the other hand, a search of corporate records
6  reveals an active *Florida* corporation called Mac & Bumble Productions, Inc. Kearney Reply Decl.
7  ¶ 4. In fact, On Line Creations has advertised model shoots in various locations around the world—
8  including Los Angeles, but notably not the Southern District. Kearney Reply Decl. ¶ 5.

Although Perfect 10 mentions an individual named Tore Kesicki as affiliated with On Line Creations, Perfect 10 does not allege that Kesicki is a resident of the Southern District. In fact, Tore Kesicki is listed as the CEO of the Florida corporation Mac & Bumble Productions, Inc. on Florida corporate filings. Kearney Reply Decl. ¶¶ 6. A 2011 Florida corporate filing listed Mr. Kesicki's address as 143 Heulitt Rd., Colts Neck, New Jersey. Kearney Reply Decl. ¶ 6. Another 2011 Florida corporate filing lists Nicole Watts as officer of Mac & Bumble Productions, and gives a Florida address for her. Kearney Reply Decl. ¶ 7. An article published in a New Jersey newspaper shows that Tore Kesicki and Nicole Kesicki purchased property at 143 Hewitt Rd. in Colts Neck in or about November 2009. Kearney Reply Decl. ¶ 8. And a search of online phone and address records on the website 411.com for the last name "Kesicki" reveals a current listing for Nicole D. Kesicki at 143 Hewitt Rd. in Colts Neck, New Jersey, and lists Tore R. Kesicki as a person "[a]ssociated" with her. Kearney Reply Decl. ¶ 9. Thus, neither On Line Creations nor Tore Kesicki appears to be a resident of the Southern District.

Perfect 10 therefore has *no* witness in this District.

### IV. EVERY WITNESS IN THE CENTRAL DISTRICT WILL BE INCONVENIENCED BY PERFECT 10'S CHOICE OF FORUM.

Perfect 10 concedes that many relevant third-party witnesses reside in the Central District, and it even hints that many more witnesses yet to be identified (including ex-employees) will be found there. Opp. at 10:15-16. Perfect 10 ignores or belittles (but fails to dispute) the inconvenience to third-party witnesses, which is an important factor in the analysis. Perfect 10 attempts to

5

minimize the importance of third-party witnesses by claiming that "the primary witness for Perfect 10 will be Dr. Norman Zada." Opp. at 10. While this may be true, it is irrelevant. Numerous witnesses in the Central District have already been identified who are likely to have relevant information, and these witnesses will be inconvenienced by Perfect 10's arbitrary choice of venue.

- **Perfect 10's former publicist, Eileen Koch**. Perfect 10 claims that because Ms. Koch no longer works for Perfect 10, her testimony is somehow irrelevant. Opp. at 8, n.4. To the contrary, her testimony is likely to be directly relevant, including regarding the strength of Perfect 10's alleged trademarks; the extent of Perfect 10's alleged damages; the real reasons Perfect 10 stopped publishing its money-losing magazine; and whether Perfect 10 was ever a viable publishing business.
- **Perfect 10's accountant Bruce Hersh**. Perfect 10 fails even to mention its accountant Hersh who has testified in other similar litigation brought by Perfect 10 and is likely to have relevant information in this case. Venue Mot. at 10.[3]
- **Perfect 10 Model Witnesses**. Although Dr. Zada claims he "does not believe" that Perfect 10 models are essential witnesses (Zada Opp. Decl. ¶ 7), that statement is not credible. Not only will Perfect 10 models be important fact witnesses about the alleged assignments of publicity rights, but they will also have knowledge about the circumstances surrounding the creation of many of the copyrighted works at issue such as who the photographers were (important on the issue of copyright ownership), and they are also likely to have insight into the business of Perfect 10. Perfect 10 acknowledges the relevance of these models' testimony (and the weakness of its right of publicity claims) when it attempts to downplay the importance by stating (inaccurately) that if Defendants' motion to dismiss Perfect 10's right of publicity claims succeeds, "testimony from those models would be irrelevant."

---

[3] Norman Zada in his Declaration in support of Perfect 10's opposition claims to have "spoken with" Hersh and certain other of the Central District witnesses identified by Defendants and claims they told him that they do not find it inconvenient to testify in San Diego. Zada Opp. Decl. ¶ 8. This statement is inadmissible hearsay.

1    While such witnesses might be subpoenaed to testify, a 240-mile round trip drive is
2    undoubtedly inconvenient.

### V. PERFECT 10 FAILS TO OFFER ANY LEGITIMATE JUSTIFICATION FOR LITIGATING THIS CASE IN THE SOUTHERN DISTRICT.

A plaintiff's choice of a forum in which it has no office, no employees, and no agents, is "meaningless in the absence of some showing that [its choice] serve[s] the interests of [plaintiff's] convenience." *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 955 (9th Cir. 1968). Perfect 10's choice of the Southern District is meaningless by that standard. Instead, its argument collapses into the self-serving and empty statement that the Southern District is a more convenient venue simply because "Perfect 10 believes it is a more convenient venue." Opp. at 2. ("Perfect 10 has demonstrated its convenience through its decision to file in the Southern District.") This "argument" proves nothing. That Perfect 10's current lawyer is located in San Diego, and that it has brought other recent cases in the Southern District, are not relevant facts. And the fact that its similar litigation against Google has been ongoing in the Central District for several years now says less about any claimed lack of efficiency of the Central District than it does about the intentional complexity Perfect 10 creates for its cases.

### A. The Location of Perfect 10's Counsel Does Not Justify Keeping This Case in the Southern District.

Perfect 10 acknowledges that the convenience of its attorney is not a valid factor in the venue calculus, but it nonetheless argues repeatedly that it should be permitted to litigate outside its home district because "Perfect 10's **only active attorney** resides in the Southern District." (Opp. 12:8-9 (emphasis in original)]; *see* Zada Opp. Decl. ¶ 9 (arguing inconvenience to Perfect 10's attorneys)). Perfect 10 claims that it would be "extraordinarily" inconvenient to litigate in both the Central District and the Southern District. (Zada Opp. Decl. ¶ 9; Opp. 12:9-11.) That would be irrelevant even if it were true, but in any event it is not true. Perfect 10 is currently represented in the Central District by at least two attorneys, who recently argued Perfect 10's pending appeal in *Perfect 10 v. Google* before the Ninth Circuit, and are still Perfect 10's counsel in the underlying district court case. Kearney Reply Decl. ¶¶ 10, 11. Even if one of its two Central District attorneys retires, Perfect

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

10 will still be litigating in the Central District.

Dr. Zada claims that Perfect 10's long-time attorney Jeffrey Mausner "has retired" but this does not appear to be the case: Mr. Mausner is lead counsel in *Perfect 10 v. Google*, and recently argued for Perfect 10 in its appeal to the Ninth Circuit Court of Appeals in the Google case. Kearney Reply Decl. ¶ 11 (Unofficial Transcript of Oral Argument, *Perfect 10, Inc. v. Google, Inc.*, No. 10-56316, 2011 WL 2581974, at 17 (9th Cir. April 11, 2011)).  David Schultz, who also represented Perfect 10 in its appeal, is also still listed as counsel in the underlying District Court case, and maintains offices in Woodland Hills, California.  Kearney Reply Decl. ¶¶ 10, 11.

Perfect 10 also fails to mention that it has brought 24 cases in the Central District in the past fourteen years, *and* that it is simultaneously suing Google in Canada.  Kearney Reply Decl. ¶¶ 12, 13.  Thus, even if the convenience of Perfect 10's attorneys were a relevant factor (and it is not), it is disingenuous of Perfect 10 to pretend it would be a hardship to find counsel in the Central District.

### B. Perfect 10's Forum Shopping Should Not Be Rewarded.

Until recently, Perfect 10 frequently filed cases in the Central District of California.  Until two years ago, Perfect 10 had not filed a single lawsuit in the Southern District.  But, after suffering a number of apparent litigation setbacks, Perfect 10 abandoned its home forum and began to bring lawsuits in the Southern District.  Beginning two years ago, Perfect 10 filed four lawsuits in the Southern District in quick succession; this is the fifth.  Perfect 10 now offers this recent string of lawsuits as justification that the Southern District is an appropriate venue.  It is not.

Between 1997 and 2007, Perfect 10 filed 24 cases in the Central District of California, including copyright infringement cases against CCBill, Google, and Amazon.com.  Kearney Reply Decl. ¶ 12.  Perfect 10's most recent Central District complaint was against Microsoft in 2007, *id,* but its case against Google continues there.  Perfect 10 settled many of its cases, but it also suffered a series of defeats, including a string of losses at the Ninth Circuit sometimes called the "Perfect 10 Trilogy."  Kearney Reply Decl. ¶ 14.  After the *Microsoft* case settled in early 2009, while Perfect 10 still had an active case in the Central District, Perfect 10 abruptly abandoned its home forum and began to file new lawsuits in the Southern District.  Perfect 10 filed all of its first four cases in the Southern District against overseas defendants, perhaps because such defendants would be less likely

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

to challenge Perfect 10's arbitrary choice of venue.  Kearney Reply Decl. ¶¶ 15-18.  This case is the fifth.[4]  Perfect 10 now argues that its forum shopping should succeed because so far no one has challenged it.  But that is not a legitimate justification for venue being most convenient in the Southern District.

### C. Perfect 10 Mischaracterizes Its Ongoing Similar Lawsuit Against Google.

Finally, Perfect 10 seriously mischaracterizes the *Google* case, other Southern District cases, and Defendants' business, in an attempt to argue that *Google* is not similar, but *Rapidshare* is, to this case.  Perfect 10 claims that *Google* "is not a direct infringement case against a paysite," and contrasts that case to the "six similar cases in the Southern District that involve direct infringement claims."  Opp. at 15.  In fact, Perfect 10 *did* sue Google for direct copyright infringement.  Kearney Reply Decl. ¶ 20 (caption page of Perfect 10 complaint against Google).  Moreover, other cases Perfect 10 has filed in the Southern District, including the *Rapidshare* case, were cases against "storage lockers" – websites that offer private online storage space to subscribers.  Private online storage lockers are very different from Usenet.  For one thing, Usenet is not private: to the contrary, an article posted to a Usenet newsgroup is publicly available.  Perfect 10 itself concedes this point, describing Usenet as "a global system of online bulletin boards."  Compl. ¶ 24.  To claim, then, that the Southern District is "substantially more familiar with this type of direct infringement case" is inaccurate.

Perfect 10 ignores the statistical truth and argues about speed of litigation based on its experience in a single case.  But the duration of the *Google* case is far more the result of Perfect 10's litigation tactics than Central District inefficiency.  Judge Matz of the Central District, who has presided over a number of Perfect 10 lawsuits, has commented that "*Perfect 10* litigation is . . . extremely complicated, sprawling and often nasty."  Kearney Reply Decl. ¶ 21; Zada Opp. Decl. Exh. 4, at 3.  Notably, Judge Matz was speaking not just about *Perfect 10 v. Google*, but about *all* the Perfect 10 cases he had presided over.  *Id.*

---

[4] Perfect 10 has since filed a sixth action in the Southern District, *Perfect 10, Inc. v. Kalmet Investments Ltd.*, No. 11-cv-1416 (filed June 28, 2011).  That case is also against an overseas defendant.  Kearney Decl. ¶ 19.

9

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO CHANGE VENUE     CASE NO. 11-CV-0905

Finally, while Perfect 10 complains about the length of time to trial in the Central District, it does not appear that Perfect 10 has ever actually brought a case to trial. Kearney Reply Decl. ¶ 22.

## VI. CONCLUSION

Perfect 10 has failed to present any relevant connection with the Southern District that would make it a proper venue. To the contrary, all relevant California contacts are with the Central District, where many important witnesses reside, and which also has the advantage of years of experience with Perfect 10's copyright litigation. Defendants respectfully ask the Court to grant this motion and transfer the case to the Central District of California. Because the facts and the law are so clear, Defendants respectfully suggest that the Court may decide this issue without the need for a hearing.

Dated: August 19, 2011.　　　　　　　　　　　　WINSTON & STRAWN LLP


By:　/s/ Andrew P. Bridges
　　　Andrew P. Bridges
　　　Jennifer Golinveaux
　　　K. Joon Oh
　　　Thomas J. Kearney

　　　Attorneys for Defendants
　　　GIGANEWS, INC. and LIVEWIRE SERVICES, INC.

SF:317172.2